UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
:
JENNIFER LEECH, *et al.*, :
: CASE NO. 1:10-CV-2645
Plaintiffs, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 23, 52, 102, 106; 108]
JOHN MAYER, *et al.*, :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiffs Jennifer Leech and Edwin Griffeth allege that police and probation officers, county prosecutors, state and local government agencies, and a county judge conspired to harass them. In total, the Plaintiffs bring twelve counts against twenty-seven defendants for alleged violations of their rights under state and federal law. [Doc. 1; Doc. 103.]

With this opinion, the Court addresses only Defendant Richland County Court of Common Pleas Judge James DeWeese's motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6). [Doc. 23-1.] Judge DeWeese argues that even if the allegations in the complaint are true, he is absolutely immune from suit because he was Plaintiff Griffeth's sentencing judge in an unrelated criminal matter, and continues to handle matters related to Griffeth's court supervised release.

Constrained by a doctrine of judicial immunity that protects a sweeping range of judicial actions, including most of the actions at issue here, the Court **GRANTS IN PART** and **DENIES**

-1-

Case No. 1:10-CV-2645
Gwin, J.

**IN PART** Defendant Judge DeWeese's motion to dismiss. Only Plaintiff Jennifer Leech's claim related to DeWeese's order removing her from her residence survives.

DeWeese is largely immune irrespective of the questions regarding his decisions. This opinion acknowledges that the compelling public benefit of an independent and impartial judiciary unimpaired by potential exposure to damages outweighs the unfairness and injustice to a litigant that may result on occasion, as is the case here. *See Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997).

### I. Background

The facts as alleged in the Plaintiffs' complaint are as follows. In August 2004, in an unrelated criminal matter, Judge DeWeese sentenced Plaintiff Edwin Griffeth to a four-year prison term following Griffeth's guilty plea to two counts of sexual battery. Two years later, after Griffeth was granted court supervised release to the Ohio Adult Parole Authority ("OAPA"), the alleged conspiracy and harassment began.

John Mayer, who is a defendant in this case, but not a party to the instant motion, had long suspected that his wife, Plaintiff Jennifer Leech, was having an affair with Plaintiff Griffeth. Coincidentally, John Mayer also supervised the Mansfield Unit of the OAPA, the same unit tasked with monitoring Griffeth's community control and supervising adult felons within Richland County. [Doc. 102-2 at 2.][1/] Although Mayer was not formally assigned to handle Griffeth's case, the Plaintiffs allege that he conspired with other probation officers and with Judge DeWeese to subject Griffeth to harassment because of Griffeth's friendship with Leech. Judge DeWeese did so, the

---

[1/] Both sides have asked the Court to take judicial notice of relevant state court proceedings. [Doc. 102-2; Doc. 103-1; Doc. 106-2.] The Court does so.

Case No. 1:10-CV-2645
Gwin, J.

Plaintiffs say, because DeWeese and John Mayer are longtime friends and because their families are part of some kind of Richland County power structure. [Doc. 1 at 11-12.]

As the Mayer/Leech marriage soured and then ended, John Mayer's obsession with Griffeth's and Leech's relationship increased. [Doc. 1 at 13.] Plaintiffs say Mayer's harassment came to a head on November 20, 2008, when, after a night of drinking at the Red Fox Tavern in Richland County, Mayer spotted Griffeth and Leech driving together. After pursuing the two in his car, Mayer called the police and had Griffeth arrested for violating "curfew" and "other conditions of his parole due to his sex offender classification." [Doc. 103-1 at 3.][2/]

The next morning, John Mayer's supervisor ordered that he have no further contact with Griffeth's case. [Doc. 103-1 at 7.] Having just lost his grip on Griffeth, Mayer contacted parole officer David Leitenberger of the Richland County Probation Department and arranged to transfer Griffeth's supervision to Leitenberger. [Doc. 103-1 at 7; Doc. 1 at 31.] Leitenberger, another defendant in this case, is John Mayer's friend and had accompanied him drinking at the Red Fox Tavern the night Mayer had Griffeth arrested. [Doc. 1 at 33.]

At 8:00 am the following Monday, November 24, Mayer allegedly met privately with Judge DeWeese to discuss Griffeth's community control. [Doc. 103-1 at 7; Doc. 1 at 33.] At this meeting, the Plaintiffs allege, Mayer and Judge DeWeese agreed to unusually transfer Griffeth's control from Mayer and the OAPA to Leitenberger and the Richland County Adult Parole Authority. [Doc. 1 at 33.] In response to the November 20 incident and arrest, which DeWeese later described as "some sort of evening confrontation," Judge DeWeese "removed [Griffeth's] supervision from the [OAPA]

---

[2/] The details of the pursuit and arrest are very troubling, but are not relevant to this opinion.

Case No. 1:10-CV-2645
Gwin, J.

and gave it to the Richland County Probation Department." [Doc. 102-2.] Additionally, a condition was placed on Griffeth's community control that prohibited Griffeth from having any contact with Plaintiff Leech or her minor daughter. [Doc. 1 at 42; Doc. 102-2 at 2.]

Griffeth was released from jail November 24; no charges were filed against him. [Doc. 1 at 43.]

In April and June 2010, Plaintiff Griffeth was back before Judge DeWeese for violating the terms of his parole, specifically for associating with Leech and lying about it. [Doc. 102-2.] At this point, Griffeth accused DeWeese of being improperly influenced by John Mayer and asked DeWeese to recuse himself. [Doc. 102-2 at 5.] Judge DeWeese refused, characterizing Griffeth's evidence in support of recusal as "written letters [from John Mayer] to the court alleging Mr. Griffeth's probation violations." [Doc. 102-2 at 5.] DeWeese did not mention his private meeting with John Mayer, or that he had attended Mayer's and Leech's ill-starred wedding ceremony.

After a hearing, Judge DeWeese ruled that Griffeth violated his no-contact condition with Leech when he allowed Leech and "her minor daughter to move into his own house . . . in October 2009 and live there without payment of rent while he has nominally moved two houses down the street." [Doc. 102-2.] Judge DeWeese found Griffeth guilty and sentenced him to six months in a community control environment, and ordered Leech out of the house. [Doc. 102-2 at 6; Doc. 1 at 47; Doc. 106-2 at 1.]

Against this backdrop, the Plaintiffs allege that Judge DeWeese acted outside his authority when he (1) surreptitiously caused the transfer of Griffeth's community control from the OAPA to the Richland County Adult Parole Authority; (2) conspired with John Mayer to bring "false charges" against Griffeth in April and June 2010; and (3) "forced Leech to vacate her home." [Doc. 31 at 7.]

Case No. 1:10-CV-2645
Gwin, J.

## II. Legal Standard

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may grant a motion to dismiss for failure to state a claim only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id*. "[A] court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Id.* at 1949-51.

## III. Analysis

Judges are accorded absolute immunity to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages from dissatisfied litigants. *Murphy v. Koster*, 2010 WL 5147215, at *4 (N.D. Ohio Dec. 13, 2010). "[A]bsolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides." *Id*. (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991)).

Here, first, the Court finds that Judge DeWeese's transfer of Plaintiff Griffeth's supervision from the Mansfield Unit of the OAPA to the Richland County Adult Parole Authority was judicial

Case No. 1:10-CV-2645
Gwin, J.

in nature and was not in complete absence of the subject matter jurisdiction of his court. The Plaintiffs say a judicial officer is "unauthorized" to make an "administrative transfer of supervision," [Doc. 31 at 8], but point to no statute or case law in support. In any event, Griffeth was on *court* supervised release, and thus DeWeese's decision to transfer Griffeth's supervision to a different agency was not taken "in the complete absence" of all jurisdiction. If Judge DeWeese met in private with John Mayer—who never supervised Griffeth—to discuss this transfer it would be unusual but nonetheless related to Griffeth's supervision. *See Forrester v. White,* 484 U.S. 219, 227 (1988) ("[T]he informal and *ex parte* nature of a proceeding has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character."). Nor does Judge DeWeese's motivation change the judicial nature of this act. *See id.* (a court order does not become "less judicial by virtue of an allegation of malice or corruption of motive.").

The Plaintiffs next allege that Judge DeWeese was acting outside his judicial capacity when he "acted in concert with John Mayer in bringing false charges against Griffeth." [Doc. 31 at 7.] The Plaintiffs say that because no charges were filed against Griffeth after he was arrested the night of November 20, 2008, DeWeese lacked jurisdiction to preside over new charges in 2010 stemming from those same facts. The Court dismisses the Plaintiffs' claims related to these events for two reasons. First, as a factual matter, the 2010 violations alleged that Griffeth: (1) on December 1, 2008, lied to Judge DeWeese about not having any association with Leech; and (2) allowed Leech to live in a house and drive a car he owned throughout 2009. [Doc. 102-2 at 4.] These alleged violations, therefore, could not have occurred before November 20, 2008. And as to absolute immunity, Judge DeWeese did not "bring" these charges against Griffeth, Griffeth's probation officer did, and thus Judge DeWeese was not acting in a investigatory or prosecutorial capacity.

Case No. 1:10-CV-2645
Gwin, J.

[Doc. 102-2 at 3.]

Finally, and most troubling, the Plaintiffs allege that Judge DeWeese lacked jurisdiction to order Plaintiff Leech out of her residence and to prohibit Griffeth and Leech from associating with each other. When Griffeth was first released from prison in 2006, Deweese ordered that Griffeth have no contact with Plaintiff Jennifer Leech. Judge DeWeese's reasons for this condition were: "First, Ms. Leech had a minor daughter, and one of the defendant's victims had been a minor. Second, she was the wife of the chief probation officer of APA Mansfield Unit #1 - John Mayer. Though they were separated at the time, John Mayer and Jennifer Leech were still legally married." [Doc. 102-2 at 2.]

It is hard for the Court to understand how these Leech-specific conditions make sense. First, neither Leech nor her daughter were in any way related to Griffeth's criminal charges. Griffeth pled guilty to having sex with a seventeen-year-old minor; if Griffeth posed some potential risk to minors, he should have been restricted from contacting *all* female minors, not just Leech's daughter, who was not his victim. It is even harder to explain why prohibiting Griffeth from contacting Leech was a reasonable, or even rational, condition. First, John Mayer was not Griffeth's probation officer, he was merely the supervisor of the department—Griffeth was not prohibited from contacting his actual probation officer's wife. And how does this condition "insure as nearly as possible the offender's rehabilitation while at the same time providing maximum protection to the general public." O.R.C. § 5149.03. These proffered reasons made even less sense after DeWeese transferred Griffeth's supervision to the Richland County Adult Parole Authority, away from John Mayer. Yet the Leech-specific conditions remained.

Nonetheless, Plaintiff Griffeth's challenges to these conditions are better addressed to the

-7-

Case No. 1:10-CV-2645
Gwin, J.

state courts. Griffeth is still on community control and has appealed the conditions of his community control and the 2010 violations to an Ohio state appellate court. Thus, both the *Rooker-Feldman* doctrine—which prohibits federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment—and *Younger* abstention—which cautions federal courts against interfering with ongoing state court proceedings—suggest that the Court should abstain from reviewing Plaintiff Griffeth's claims as they relate to the conditions of his community control. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983); *Younger v. Harris*, 401 U.S. 37 (1971).[3/]

However, these abstention doctrines do not prohibit the Court from reviewing Judge DeWeese's order that Plaintiff Leech vacate the house she was living in. According to the complaint and state court decisions currently before the Court, Leech has never been a party in any matter before Judge DeWeese. Yet, after finding Griffeth guilty of violating the terms of his community control by allowing Leech to live in a house Griffeth owned (but did not live in), DeWeese ordered that "Leech is to be removed from the home owned by the defendant [Griffeth]." [Doc. 106-2 at 1.] If, as alleged in the complaint, Judge DeWeese directly ordered non-party Leech out of her home, without jurisdiction or process, Plaintiff Leech has stated a claim against DeWeese.

---

[3/] Alternatively, the Court finds that because Judge DeWeese was acting in his judicial capacity in setting the terms of Griffeth's community control and in finding that Griffeth violated those terms, Judge DeWeese is entitled to absolute immunity on the Plaintiffs' claims related to this conduct. This includes Plaintiff Leech's claims that the terms of Griffeth's community control adversely affected her rights to speech and association. To be sure, Judge DeWeese's order that Griffeth not associate with Leech necessarily prohibited Leech from associating with Griffeth, but that distinction matters.

Moreover, the Plaintiffs' allegations that Judge DeWeese was improperly influenced by John Mayer in setting Griffeth's conditions does not change the judicial character of these acts. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.").

Case No. 1:10-CV-2645
Gwin, J.

Nor has DeWeese met his burden of establishing absolute immunity to this claim. Judge DeWeese could have arguably ordered Griffeth to not allow any female minors to live on property that Griffeth had vacated—which likely would make no sense if Griffeth gave up occupancy of his property. But more important to the immunity analysis, DeWeese had no apparent jurisdiction to directly order non-party Leech to vacate the house she was living in or to do anything else. Against this backdrop, Judge DeWeese argues that absolute immunity shields judges from "exposure to damages by dissatisfied litigants." [Doc. 23-1 at 8.] That may be true, but, here, Leech was not and is not a litigant before Judge DeWeese.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Judge DeWeese's motion to dismiss and **DENIES** Judge DeWeese's motion for a protective order. Specifically, all Plaintiff Griffeth's claims fail and all but one of Plaintiff Leech's claims fail. The Court allows Plaintiff Leech's claim related to Judge DeWeese's order removing her from her home to proceed.

IT IS SO ORDERED.

Dated: April 21, 2010      s/ *James S. Gwin*
                           JAMES S. GWIN
                           UNITED STATES DISTRICT JUDGE