```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
JENNIFER LEECH, et al.,                     :
                                            :    CASE NO. 1:10-CV-2645
            Plaintiffs,                     :
                                            :
      v.                                    :    OPINION & ORDER
                                            :    [Resolving Doc. Nos. 153, 174, 176, 192]
JOHN MAYER, et al.,                         :
                                            :
            Defendants.                     :
                                            :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this decision, the Court examines whether the plaintiff who was under post release control under Ohio law can make a civil rights claim when a parole officer who was likely drunk, who was off-duty, who was not assigned to supervise the plaintiff, and who was stalking his estranged wife, caused the arrest of the plaintiff for associating with that estranged wife? Because neither Ohio nor federal law give parolees any real right to avoid arrest, the Court grants Defendant John Mayer's motion for summary judgment.

With this case, Plaintiffs Jennifer Leech and Edwin Griffeth generally allege that police and probation officers, county prosecutors, state and local government agencies, and a county judge conspired to harass them. In total, the Plaintiffs bring twelve counts against twenty-seven defendants for alleged violations of their rights under state and federal law. [Doc. 1.] [Doc. 103.] Of those twenty-seven defendants, only the claims against John Mayer remain.

Defendant John Mayer, a former employee of the Ohio Adult Parole Authority (OAPA),

Case No. 1:10-CV-2645
Gwin, J.

moves this Court for summary judgment.[1] He says he is entitled to summary judgment based on qualified immunity, and seeks dismissal based upon a his claim that this Court lacks subject matter jurisdiction under the Eleventh Amendment. [Doc. 153.] The Plaintiffs oppose the motion. [Doc. 174.] For the reasons stated below, the Court **GRANTS** Defendant's motion for summary judgment.

## I. Background

In August 2004, Plaintiff Griffeth pled guilty to an information and was convicted of two counts of sexual battery. The offense apparently involved Griffeth having sex with two high school classmates of his son. Both victims were drugged prior to the sexual conduct. Richland County Common Pleas Judge DeWeese sentenced Griffeth to four years in prison. After two years incarceration, DeWeese then granted judicial release and placed Griffeth on community control sanctions for five years.

Defendant John Mayer served as a supervisor of the local branch of the Ohio Adult Parole Authority. Apparently, Plaintiff Griffeth and Plaintiff Jennifer Leech took up a friendship or romance after Griffeth's release amidst Leech's disintegrating and short marriage to Mayer.

Defendant John Mayer long suspected that his wife, Plaintiff Jennifer Leech, was having an affair with Plaintiff Griffeth. Mayer supervised the Mansfield Unit of the OAPA, the same unit tasked with monitoring Griffeth's community control after Griffeth's release from prison. Griffeth's supervision was initially assigned to another officer, but Mayer, as a supervisor, "took control" of the case, even though he had "no permission from his OAPA supervisor and/or authority to do this."

---

[1] Defendant Mayer filed his motion for summary judgment in conjunction with the so-called OAPA Defendants (the Ohio Adult Parole Authority, Russel Daubenspeck, David Lomax, Ron Nelson, Lee Sampson, and Lazarus Todd.) [Doc 153.] Prior to the joint motion for summary judgment, the other OAPA Defendants filed a motion to dismiss based on Eleventh Amendment immunity and failure to state a claim. [Doc 126.] The Court granted the motion to dismiss on August 1, 2011. [Doc. 159.] Defendant John Mayer did not join the motion to dismiss. Thus, the claims against him and his motion for summary judgment remain before the Court.

-2-

Case No. 1:10-CV-2645
Gwin, J.

[Doc. 1 at 21-22.] Although OAPA policy mandated that Mayer disclose his relationship with Griffeth, he "never disclosed to the OAPA that he had a conflict of interest in Griffeth's case." [Doc. 1 at 22.]

Over the next couple of years, from 2006 through 2008, Mayer allegedly harassed Griffeth, including subjecting him to "approximately 50 urinalysis tests and/or approximately 50 Breathalyzer tests," despite Griffeth never testing positive for drugs or alcohol. [Doc. 1 at 30.]

Mayer and Leech separated in January 2008, and Mayer started to stalk Plaintiff Leech. During this period and somewhat illogically, Mayer gave Leech an official State of Ohio service revolver for protection.

After Mayer's divorce and on November 20, 2008, the harassment came to a head. Off duty, Mayer went to a bar, and as Sergeant Sweat testified, became "obviously intoxicated, under the influence of alcohol" with slurred speech and "was definitely beyond that of operating a motor vehicle . . . or being out walking down the street by himself." [Doc. 174-3 at 27] Drunk and full of rancor over Griffeth and Leech's friendship, Mayer left the bar in a rental car and drove to Leech's place of employment. Leech left work, and Mayer "tailed" her for twenty minutes – presumably hoping to catch Leech and Griffeth together. [Doc. 1 at 16.]

In fact, Griffeth and Leech had prearranged to meet at a parking lot to discuss their issues with Mayer. Frightened that she was being followed, Leech got into Griffeth's car and they drove away.[2] [Doc. 174-1 at 228, 232.] Mayer called the police to report that Griffeth was violating a condition of his community control, and, in violation of OAPA procedures, pursued the Plaintiffs

---

[2] That Mayer observed Griffeth and Leech driving together is not in dispute. However, Mayer denies following Leech for twenty minutes. He alleges that he first observed the Plaintiffs driving away from Leech's house. [Doc. 174 at 68-69.]

-3-

Case No. 1:10-CV-2645
Gwin, J.

back to Griffeth's mother's house. [Doc. 174-1 at 86-87.] A verbal altercation ensued while the parties waited for the police. Reeking of booze, Mayer screamed obscenities and accused Leech of choosing a sex offender over him. [Doc. 174-6 at ¶¶ 26, 30.]

Bellville Police Officer Burt Skeen arrived on the scene and arrested Griffeth for probation violations. Officer Skeen transported Griffeth to the Richland County Ohio Sheriff's Department where he was held for four days. [Doc. 1 at 18.] Mayer also drove to the Richland County Sheriff's Department and filed the holding paperwork for Griffeth. Because Mayer appeared intoxicated, however, Sergeant Sweat insisted that Mayer call someone else to drive him home. [Doc. 172-2 at 277, 281-82.] The County did not bring parole violation charges against Griffeth directly after the November 20, 2008 incident. The OAPA fired Mayer the following April. [Doc. 174-1 at 17.]

Although no violation charges were pending, DeWeese transferred Edwin Griffeth's supervision from OAPA to the Richland County Adult Court Services; presumptively to avoid the obvious conflict of interest. [Doc. 1 at 65-66.] Richland County Adult Court Services assigned Dave Myers to supervise Griffeth. Apparently having a workload light enough to allow him to supervise the his defendants's dating practices, DeWeese amended Griffeth's community control conditions to include a new no-contact term that prohibited Griffeth and Leech from associating with each other. [Doc. 1 at 21-22.] While restrictions on Griffeth's access to minors or access to felons seems obvious, one can only guess how DeWeese justified restraining Griffeth from associating with a non-felon adult.

In April, 2010, Griffeth was charged with violating the terms of his court supervision. DeWeese found Griffeth guilty and sentenced him to six months in a community control environment. [Doc. 1 at 46-47.]

-4-

Case No. 1:10-CV-2645
Gwin, J.

Against this backdrop, Plaintiffs bring claims against John Mayer alleging 1) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations; 2) conspiracy; and 3) 42 U.S.C. § 1983 claims for unlawful arrest.[3/]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden is met by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. Id. at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." Lenscrafters, Inc. v. Robinson, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted).

## III. Analysis

**1. Claims Against John Mayer in his Official capacity**

The Eleventh Amendment "is a bar to federal court jurisdiction whenever a private citizen

---

[3/]The Complaint and Amended Complaint also allege claims for the following: malicious prosecution (count 4); municipal liability (count 5); First Amendment violations (count 6); due process violations (count 7); *Bivens* (count 8); *Pottawattamie County v. McGhee* (count 9); equal protection (count 10); due process violations (count 11); and the Second Amendment (count 12). [Doc. 1.] [Doc. 103.] These claims do not implicate Defendant John Mayer.

Case No. 1:10-CV-2645
Gwin, J.

attempts to sue a state." *See Lawson v. Shelby County*, 211 F.3d 331, 334 (6th Cir. 2000). Eleventh Amendment immunity applies not only to the states themselves, but also to "state agents and state instrumentalities." *Regents of Univ. of Calif. v. Doe*, 519 U.S. 425, 429 (1997). The OAPA is a state agency entitled to immunity. As an employee of the OAPA, John Mayer, in his official capacity, is also entitled to Eleventh Amendment immunity.

There are, however, three exceptions to the Eleventh Amendment bar: (1) if the state has consented to suit; (2) if the circumstances first recognized in *Ex parte Young*, 209 U.S. 123 (1908), are present; or (3) if Congress has abrogated the state's immunity. *See Beil v. Lake Erie Correction Records Department*, 282 F. App'x. 363, 366 (6th Cir. 2008) (unpublished). Because the Eleventh Amendment is a bar to federal court subject matter jurisdiction, the burden is on the plaintiff to prove jurisdiction in order to survive a summary judgment motion. *Id.* at 365. Yet the Plaintiffs here advance no argument on Eleventh Amendment immunity and, instead, address only qualified immunity. [Doc. 174.] Because the Plaintiffs fail to show that Defendant Mayer is not entitled to Elevnth Amendment immunity for official capacity claims, the Court grants Defendant John Mayer's motion for summary judgment for claims against him in his official capacity.

**2. RICO and Conspiracy Claims**

In counts 1 and 2 of the Complaint, the Plaintiffs allege violations of RICO and conspiracy laws. As the Defendant correctly points out in his reply brief, the Court dismissed the Plaintiffs' RICO and Conspiracy claims against the other OAPA defendants. [Doc. 159.] The Court found that the Plaintiffs had failed to state a claim on which relief could be granted.

> The Plaintiffs' have also failed to state a plausible claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. A complaint asserting a RICO claim must allege the (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Kenty v. Bank One,*

Case No. 1:10-CV-2645
Gwin, J.

> *Columbus, N.A.*, 92 F.3d 384, 389 (6th Cir.1996). In order to establish a pattern of racketeering activity the plaintiffs must allege at least two predicate acts under 18 U.S.C. § 1961(1). Id. The Plaintiffs generally allege facts supporting the acts of: (1) false arrest; (2) theft of a phone; (3) unlawful search of a phone; and (4) stalking. [Doc. 1 at 66-78.] Yet even after liberally construing Plaintiffs' factual allegations into identifiable state or federal crimes, the Court is unable to find two predicate acts under § 1961(1), which lists crimes such as bribery, murder for hire, and dealings in chemical weapons. Thus, because the Plaintiffs have failed to allege facts supporting a civil RICO claim, the Court dismisses this claim against the OAPA Defendants.
>     Finally, as to the Plaintiffs' conspiracy claim, the Plaintiffs broadly allege some type of tacit agreement among OAPA employees to keep quiet, allowing Mayer to allegedly harass the Plaintiffs. Nowhere in the complaint, however, is there an allegation that the OAPA Defendants acted with discriminatory animus based on a constitutionally protected suspect classification, a necessary element to a 42 U.S.C. § 1985(3) conspiracy claim. *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). The Court therefore dismisses this claim against the OAPA Defendants.

[Doc. 159 at 6-7.] The Court's prior reasoning holds true for Defendant John Mayer as well. First, the Plaintiffs have not alleged that Mayer committed two predicate acts sufficient to support a claim for RICO violations under 18 U.S.C. § 1961(1). Second, the Plaintiffs have not alleged that Mayer, in conjunction with his coworkers, acted with discriminatory animus based on a constitutionally protected suspect classification. The Plaintiffs have thus failed to allege facts supporting a civil RICO claim or a conspiracy claim; in fact, the Plaintiffs fail to offer any argument to the contrary in their opposition to the motion for summary judgment. [Doc. 174.] Therefore, the Court grants Defendant John Mayer summary judgment on counts 1 and 2.

**3. Count 3: Unlawful Arrest**

Count 3 of the Complaint asserts a cause of action under 42 U.S.C. § 1983 and alleges that Mayer unlawfully arrested Griffeth on November 20, 2008. [Doc. 1 at 80.] In his motion for summary judgment Defendant Mayer argues that he is entitled to qualified immunity on unlawful arrest claims. Mayer says that he observed Griffeth violate the terms of his probation and therefore

-7-

Case No. 1:10-CV-2645
Gwin, J.

had authority to notify law enforcement and effect an arrest. [Doc. 153 at 4.] To survive Mayer's motion for summary judgment, the Plaintiffs must demonstrate that Mayer is not entitled to qualified immunity and offer evidence of actual constitutional violations.

*a. Qualified Immunity*

"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

In determining whether a defendant is entitled to qualified immunity, the Court must employ a two-part analysis. The Court must determine (1) whether, while viewing the facts in the light most favorable to the plaintiff, a violation of a constitutional right occurred and (2) whether the constitutional right at issue was clearly established at the time of the defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).[4] Courts have discretion, based on the circumstances of the case, to decide which of the two inquiries should be addressed first. *Pearson*, 129 S. Ct. at 818 (2009).

---

[4] When analyzing claims of qualified immunity, courts in the Sixth Circuit also sometimes use a three-step analysis. Under the tripartite approach, a court must also analyze whether "the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). However, since this step was not noted by the Supreme Court in *Saucier* and *Pearson*, this inquiry is no longer mandatory. *Carter*, 408 F.3d at 311. Rather, the Sixth Circuit Court of Appeals has explained that step three is now merely a useful tool in certain cases in increasing the "clarity of the proper analysis." *Id.* Because the inquiry in this case does not go beyond the determination of a constitutional right, any discussion of the third step is unnecessary.

-8-

Case No. 1:10-CV-2645
Gwin, J.

"Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006) (citing *Barrett v. Steubenville City Schs.*, 388 F.3d 967, 970 (6th Cir.2004)).

*b. Violation of a Constitutional Right*

Griffeth asserts that the Defendant unlawfully arrested him without probable cause or a valid warrant.[5/]  The Fourth Amendment protects, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "The Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979).  Probationers such as Petitioner Griffeth, however, "do not enjoy the absolute liberty to which every citizen is entitled." *United States v. Knights*, 534 U.S. 112, 119 (2001) (citations omitted).  The Supreme Court "has repeatedly acknowledged that a State's interests in reducing recidivism and thereby promoting reintegration and positive citizenship among probationers and parolees warrant privacy intrusions that would not otherwise be tolerated under the Fourth Amendment." *Samson v. California*, 547 U.S. 843, 853 (2006).

Probable cause that a probationer has violated a term of his supervised release can provide the requisite probable cause for an arrest. *See*, *e.g.*, *Portentoso v. Kern*, 532 F.Supp. 2d 920, 930 (N.D. Ohio 2008); *Drogosch v. Metcalf*, No. 05-60071, 2007 WL 2421477, 4 (E.D.Mich. August 22, 2007) ("The evidence shows that the officers arrested Plaintiff because they reasonably believed he was in violation of his probation by his drinking and because he was a convicted felon in possession of a firearm.) *See also* *U.S. v. Butcher*, 926 F.2d 811, 814 (9th Cir. 1991) ("probable

_____

[5/]Presumably Plaintiff Leech makes no claim for unlawful arrest because she does not assert that she was ever actually arrested.

-9-

Case No. 1:10-CV-2645
Gwin, J.

cause is not required to arrest a parolee for a violation of parole. Warrantless arrests of parole violators are also valid."), *cert. denied*, 500 U.S. 959 (1991). Moreover, under Ohio Revised Code Section 2951.08(A), "During a period of community control, any field officer or probation officer may arrest the person under a community control sanction without a warrant and bring the person before the judge or magistrate before whom the cause was pending."

In support of their opposition to the motion for summary judgment, the Plaintiffs filed Griffeth's conditions of release. [Doc. 174-8.]. Griffeth's 'Sex Offender Special Conditions' prohibit him from "driv[ing] or rid[ing] in a motor vehicle with females without the knowledge and permission of my supervising officer." [Doc. 174-8 at 3.] By the Plaintiffs' admission, then, Griffeth was in violation of his conditions of release on the evening of November 20, 2008. [Doc. 174-2 at 422.] Defendant John Mayer observed Griffeth riding in a car with a female, and he had sufficient cause to believe that Griffeth was in violation of the terms of his supervised release. As such, Mayer also had probable cause to arrest Griffeth.

In no way does this Court condone Defendant Mayer's actions. An arrest with sufficient probable cause, however, does not violate the Fourth Amendment's guarantees, even when founded upon a violation of questionable community control conditions. Therefore, the Plaintiff has failed to show that Defendant John Mayer violated his constitutional rights, and the Court grants Mayer summary judgment on unlawful arrest.

**4. Counts 4 - 9: Malicious Prosecution, Municipal Liability, First Amendment violations; Due Process Violations; Bivens; and Pottawattamie County v. McGhee**

The Plaintiffs generally accuse "the Defendants" of six other causes of action: malicious prosecution (count 4); municipal liability (count 5); First Amendment violations (count 6); due process violations (count 7); *Bivens* (count 8); *Pottawattamie County v. McGhee* (count 9);[Doc. 1.]

-10-

Case No. 1:10-CV-2645
Gwin, J.

The Court finds that these causes of action do not state claims against Defendant John Mayer.

First, the Plaintiffs say that Defendant John Mayer was terminated by the OAPA in 2009. The allegations of malicious prosecution and due process violations revolve around Griffeth's conviction for judicial release violations in the Spring of 2010. [Doc. 1 at 84.] No sufficient evidence shows that Mayer controlled the decision to proceed with the community control violation. Thus, Mayer was not involved in the judicial release proceedings, and the Court grants Defendant Mayer summary judgment with regard to the malicious prosecution claim.

Next, the Plaintiffs allege that "[t]he Defendants placed a term of Plaintiff #2, Edwin Griffeth's, judicial release to have no contact and/or have no association with Plaintiff #1, Jennifer Leech." [Doc. 1 at 83.] In April and May 2010, Griffeth was charged and found guilty of probation violations. *See State v. Griffeth*, No. 2011-Ohio-4425, 2011 WL 3860469 (Ohio Ct. App. Aug 30, 2011). On appeal to the Fifth District Court of Appeals, Griffeth also argued that the no-contact order violated his First Amendment rights. *Id*. at ¶ 13. The Fifth District Court of Appeals affirmed, and found that the no-contact order did not violate Griffeth's First Amendment Rights. *See id*.

Even if this cause of action is directed toward Defendant John Mayer, this Court lacks subject matter jurisdiction to consider the issue. In *Heck v. Humphrey*, 512 U.S. 477 (1994), the United States Supreme Court held that in a case alleging damages resulting from an unconstitutional conviction, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id. at 486-87*. A damages claim "bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* If a state prisoner seeks damages in a §1983 suit,

-11-

Case No. 1:10-CV-2645
Gwin, J.

the district court must dismiss the action if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence. *S.E. v. Grant County Bd. of Educ.*, 544 F.3d 633, 637 (6th Cir. 2008) (citing *Heck*, 512 U.S. at 487).

The Plaintiffs seek monetary damages for the violation of their First Amendment rights. Judgment for them, however, would necessarily imply that no-contact probation term is unconstitutionally invalid, and that term has not been declared invalid by a state tribunal. This Court thus lacks subject matter jurisdiction over the First Amendment claim, and it must be dismissed.

Finally, even if the Plaintiffs' claims under municipal liability, "Bivens", and "Pottawattamie County v. McGhee" stated a claim on which relief could be granted, those allegations do not allege injury by Defendant John Mayer as an individual.[6] Again, insofar as the Plaintiffs intended to bring these claims against him, the Court grants Defendant John Mayer summary judgment.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant John Mayer's motion for summary judgment and dismisses all claims against him. The Court **DENIES** as moot Defendant Mayer's motion to stay. [Doc. 192.]

IT IS SO ORDERED.

Dated: October 21, 2011                    *s/  James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

---

[6] Similarly, the Amended Complaint's claims of equal protection, due process, and Second Amendment violations do not implicate Defendant John Mayer. [Doc. 103.]